Good morning, everyone. First case is Derrickson v. District Attorney. Judge McKee, I may please the court. My name is Fuad Rana, counsel for the appellant Rodney Derrickson in this matter. I would like to reserve three minutes for rebuttal, please. We ask this court to recognize a narrow constitutional right permitting Mr. Derrickson to access certain crime scene evidence post-conviction into possession of the District Attorney's office for the limited purpose of subjecting that evidence to testing, which has the potential to yield test results probative of Mr. Derrickson's factual innocence. But in his trial, Mr. Derrickson knew about this potential test and he's done nothing about it. This is very different from DNA, which is a technique that has been developed since many defendants went on trial. But when he since he's known about it the whole time, why should we reopen a finished case to let him do something that he could have done a long time ago? Judge Roth, let me answer your question in two parts. First, in reviewing the record on appeal, it is not at all entirely clear to us that Mr. Derrickson's trial counsel had a meaningful opportunity or basis to seek testing of the clothing evidence in the underlying trial. You could have asked. The prosecution's witness testified that there was no stippling, I guess, on the skin of the decedent. There was testimony about it being a close-range firing. I'm not sure if it was a contact shot or not. I'm not sure it got that specific. But there was enough evidence to suggest to the trial counsel that the reason that there may not be any stippling on the skin may be either because powder was absorbed by the coat that he was wearing, the down coat, or that the gun was further away and wouldn't have produced any powder burns on the skin, which would have been inconsistent with the witnesses, and he could have asked for testing. Well, Judge McKee, there's a couple different points to respond to. The first is that Dr. Conestoga, the state's expert forensic pathologist, his testimony on this issue didn't come to the second trial, almost to the end of the trial. So the Commonwealth still goes first. The Commonwealth's own witness opened the door to this area and created the doubt that could have been exploited by the defense during trial. Isn't that correct? That's a possibility, Judge Smith. I mean, as court-appointed counsel, we're sort of constrained in the record that we have. Boy, it's not a record to be – it's not a fun record to be stuck with. But not only was it not raised during trial, it wasn't even raised during collateral attack later on, was it? I mean, we're getting this now for the first time after numerous opportunities, it would seem to me, during various procedural stages of this long prosecution and its appellate and collateral results. Judge Smith, I want to answer that question. I think it relates to the question that Judge Roth began with. The fact that the testing, assuming that Mr. Derrickson's counsel could have requested it at the underlying trial we submit, is not a categorical bar to Mr. Derrickson's claim as a district attorney office urges this court to rule. At most, it is a factor for this court to consider in the overall due process analysis. Such an approach, which takes the fact that the testing was available earlier and balances that against a competing interest in this case, we think is far more consistent with the flexible due process framework that this court has commonly used. So in this case, the fact that... Commonly used in what procedural setting? This court has routinely said the due process is a flexible concept that should be adapted to the nature of the claim at stake. It's flexible, but it has a membrane around it. It's contained. It's not infinitely expansive. And how could we, even if you're right on the merits, substantively, of what you're arguing, this strikes me as the preeminently wrong case to establish this principle. Ten years have elapsed. The evidence that you're trying to get may well convict, corroborate the conviction, as well as undermine it. It's not really... It's in the nature of a Brady claim, but it's not a Brady claim. I don't know what it is. I think you raise an important point, and I want to get to that. In this case, the district attorney's office has not disputed the fact they are in possession of evidence, the testing of which may yield evidence of... Sure, but what is the character of that evidence? You said pretty much at the outset or invoked actual innocence. That's correct. Right? That's Mr. Derrickson's only hope here. His only opening would be actual innocence. Isn't that correct at this point in time, this far down the road? Yeah. I mean, the purpose here of using this evidence is to lay the factual predicate for a claim of innocence, whether he uses that in a petition for executive clemency or he brings it... I understand. What kind of a threshold is that? I'm sorry? What kind of a threshold, how high of a threshold is that to show? Sure. Courts have used varying standards in this context. The Wade District Court in the District of Massachusetts used a reasonable probability standard. In our reply brief, we said the court might consider using a higher standard to the extent that it has concerns that the evidence was available earlier. Well, not only that it was available earlier, as we've already explored through our questions, but what about the nature of the evidence itself? Some of the cases, it seems to me, the important cases that you have brought to our attention, not least of which is Osborne, which now is going to be heard by the Supreme Court, involve DNA evidence, do they not? That's correct, Judge. We all know what the probabilities are that are thrown off for evidentiary use from DNA evidence. That's not at all what we have here. You can exculpate very clearly and to a high degree of probability under DNA evidence, correct? Judge Smith, I may agree. Just hear me out here. Yes or no? I think as an abstract matter, I agree with you. But in practice, courts have not done that. If you look at the Eleventh Circuit's decision in Grayson. Isn't that the character of the evidence, high degrees of probability with respect to the nature of the DNA? And what would you do even if you get this evidence? As I understand the evidence, it's not exculpatory. What it could at best do for you is A, demonstrate that the shooting did not occur or support a theory that the shooting did not occur at close range. And then secondarily to that, undermine the testimony of the two eyewitnesses who testified against Mr. Derricks. Judge Smith, this case, the evidence of guilt presented in Mr. Derrick's trial we submit was hardly compelling. I understand that, but again, you're not answering my question. I'm trying to understand the use that you would make of this. If there is no evidence that the victim was shot at close range, there is no evidence left in this record to stand a conviction against Mr. Derrickson. This is not a case like Grayson's. It would undermine the testimony of the two eyewitnesses, wouldn't it? That's correct, Judge Smith. Because they're the two people who said he was shot at close range. That's correct, Judge Smith. And Mr. Derrickson could then use that evidence, that factual predicate, to proceed to a claim, whether it's a petition for executive clemency before the Pennsylvania State Board of Pardons, to file a federal habeas petition asserting innocence as a basis of a claim, or to file a state PCRA claim. The District Attorney's Office has never disputed the probative value of that test. This is not a case, for instance, like Grayson, like I mentioned, where there was some independent corroborating evidence in the record, such as a confession from the defendant, such as other testimony, that might sustain the conviction even if the test results came back as exculpatory. There are also two other points that I would like to make that I think really tilt this case in favor of granting access to the evidence. The District Attorney's Office has yet to identify any burden or prejudice that it would face if it had to grant access to this evidence. This evidence is literally sitting in the evidence locker. All right. In this case, that may be true. But if this Court were to adopt the rule that would flow from your position, that is, access pursuant to 1983 of evidence that could have been presented or proffered in a trial, who knows how many years before, and also allow that action to take place, not pursuant to any pending action just because someone wants it, what is the potential for District Attorney's Offices, for prosecutors out there, who have never even used evidence and have had no real reason to keep it or inventory it in any meaningful way, to be subject to these kinds of claims so far downstream? Just to raise a couple of points there. On the second point you were making, whether we are somehow implying a duty of preservation, nothing that the Court has to decide today would require a determination that a District Attorney's Office has to retain evidence. Why wouldn't that be the natural corollary of the rule you're asking us to adopt? Judge McKee, presumably DA's Offices have procedures in place regarding retention of evidence. If those procedures are followed in good faith, it's hard to see. Well, what if it was never evidence? I mean, this was never trial evidence, was it? Right? I mean, I don't have access to the complete record. I don't want to say that it wasn't, but based on the record we have. Did you read the trial transcript? We have only the portion of the trial transcript that were included in the District Court, which is not the entire trial transcript. And only selected portions of that have made it into the record on appeal. But Judge Smith, to go to your first point, whether this is going to open and affect the floodgate of litigation, we're really asking this Court for a very narrow ruling. The facts of this case are unique. How can it be narrow, though, Mr. Rana, on these facts? If you are saying that we can't find anywhere in this record, we don't know whether it was ever even offered at trial. The field of discoverable evidence, and I use that modifier intentionally, because in the cert grant that's precisely what the Supreme Court characterized one of the claims to be, whether or not 1983 could be used as a discovery device. The field is enormous, and I'm wondering how, as a county district attorney, I can ever have any ability to foresee just what evidence I ought to retain and what I shouldn't. Judge Smith, that issue is not before the Court because the evidence has been retained in this case. You're assuming, though, that we just write these opinions and they only apply in a particular case. And we can try to make it incredibly narrow so that it will only apply in this case. But there's no way to escape the argument if we were to go your way, that in some subsequent case, since the DA has an obligation, since there may be something out there which was or was not introduced in evidence that may or may not help the defendant establish innocence, it seems to me it automatically flows from that that the Commonwealth has an obligation in the future, in the future it would be characterized as a due process obligation, to withhold everything that it comes across in the way of physical evidence that if certain tests were, if it was subjected to certain tests, may be irrelevant to establish guilt or innocence. I don't know how you could escape that rule coming out of this case. Judge McKee, I see my time is up. May I answer your question? District attorney's offices have procedures in place regarding the retention and destruction of evidence. Assuming that those procedures are followed... Thank you. Pennsylvania District Attorney from a smaller county. Very small. All right. Shall we extend his time, Judge McKee, so we can pursue that? Bigger than the state of Delaware. Well, yes. And bigger than the state of Delaware. Bigger than the state of Delaware. I can assure you that the vast majority of counties in the Commonwealth of Pennsylvania have small DA's offices, not like Philadelphia, where their assets are few, their physical facilities are extremely limited, and there is not the potential to inventory or house the vast amount of potential matter that a rule from a case, coming from a case like this, might make reachable and or impose upon the Commonwealth the obligation to retain. So your several references to county district attorney's offices having these policies or practices in place, I can assure you that while that may, as a simple fact, be true, it is subject to profound limitations. Just if I may respond to that. We're not, and perhaps I wasn't clear, not suggesting that DA's offices have to start retaining evidence. This case is really unique, and I think this goes to Judge McKee, your point, about whether you're going to open the floodgates of litigation. For whatever reason, the DA's office held on to this evidence. It is sitting in an evidence locker, and they are now denying, even though they admit this evidence may provide the factual predicate for a claim of innocence, are simply denying Mr. Derrickson access to the evidence. They've already agreed, and they've already produced some evidence, photographs taken of the crime scene. They are just now arbitrarily refusing to hand over other evidence, evidence they know is more probative of Mr. Derrickson's innocence, and we submit. Well, they don't know that, because it's probative, perhaps, of either guilt or innocence. We don't know how it was stored. Let's assume it's tested, there's nothing on it. It seems to me you'd have to have some preliminary showing, if you're right about the right here, to show that given the way this jacket was stored in the ten years since the conviction, that there is a certain likelihood that any powder marks or any powder microscopic traces of powder would still be on the jacket. Absent that, I'm not even sure that you've made a threshold showing that it is probative. Judge McKee, the State could have made those arguments. They didn't. But it's your burden. It's not their burden to show that. Isn't it your burden to show that that jacket has potentially enough probative value for us to walk out on the limb you're asking us to walk out on? I would submit that as a factual matter based on the record evidence from the criminal trial, we've at least established the probative significance of the evidence. We don't know how it's been stored. We don't know what the chain of custody is. But you could have found out. It's a civil action. You could have brought in an expert, gotten a report, filed an affidavit, as to given the conditions under which they're saying it's being stored, deposed their folks about how it was stored, and then brought in an expert to say, well, I think there's a certain probability that given this kind of jacket being stored in this way, if there was a close range firing as the evidence showed, there would still be a certain likelihood, and it would have to be more than 50 percent, of putter marks, putter burns still being on the jacket. Judge McKee, respectfully, we weren't the counsel in the district court below. But to the extent, you know, the district. You could do it now. This is the 1983 action. You know, I'm saying in the district court action, the EDPA, from which this appeal is pending. We didn't build this record. The court has concerns about that. I would note the district attorney's office has not contested our characterization as evidence. But if the court has concerns about that, you know, a remand could be appropriate to look into this evidence in the manner in which it was kept. We obviously, as court appointed appellate counselors, were limited to the record that was created on appeal. I would just point out the district attorney's office had ample opportunity, whether in the district court below before Judge O'Neill or before this court, to raise those very questions that the evidence is of dubious scientific value today. Yeah, but if there's no legal obligation on them to produce it, which is their contention, why should they jump through all these hoops to show that it's a minimal evidentiary value anyhow? I mean, they could have done it, but why should they do it? I think that goes to the burden that they would suffer. For instance, they could argue, they haven't, but they could argue that the evidence is of such poor quality after 9 or 10 years, whatever it is, that the testing would no longer be reliable as an evidence of close range findings. Well, if they made that argument, given your theory then, wouldn't that give rise to an argument that there is an obligation on their part to take reasonable steps to store this evidence, to store this jacket, which may not be evidence, under conditions that would allow for subsequent testing 10, 15, 20 years down the road? You can't escape that argument based upon what you're asking us to rule here. Judge McKee, I go back to what I said before. The evidence, for whatever reason, after 9 years, is still sitting there. This isn't a case where … After 9 years from when? I thought the trial was in 1995. 1995. And Mr. Dirksen brought his claim for access to the evidence in 2004. When was the shooting? The shooting was on December 14, 1994. The first trial, which ended in a hung jury, was in summer of 1995. The actual trial at which Mr. Dirksen was convicted was in 1995. I think it was October. So we're 13 years from a trial at which these items may or may not have even been proffered. We know they're not part of the record, right? That's correct, Judge Smith. Can we save some time, I think, for a moment? Thank you, Judge. Good morning. May it please the Court. My name is Matthew Connell. I represent the Delaware County District Attorney's Office in this action. Let me just ask, not as a legal matter, but just as a former federal prosecutor, why not test this stuff? I remember sitting as a trial judge one time in a rape case, and I had some doubts in a waiver trial. And I asked the DA to take some steps to test some latent prints against the known prints of somebody in the local jail who would have looked an awful lot like the defendant. And there was an issue about whether or not it was a mistaken identity. I just asked the DA, go take an exemplar of his prints, run them against the latents from the refrigerator in this woman's house, and see what we have. Why not do that here? Why not? Whether or not this is a legal right, you'd think that as a prosecutor, you really want to know whether or not you've got the right guy, especially given the quality of the prosecution witnesses here. First, Your Honor, if I may, just kind of as a side issue, I am not a prosecutor. I do represent the prosecutor's office. You're right. You're right. I was a minor assistant DA a long time ago. But to answer your question more directly, the Commonwealth recognizes its burden, and the Delaware County District Attorney's Office recognizes its burden in a criminal matter. And they also have to operate within the restrictions or constrictions of their office and their investigators and the investigation. And if they have a case, and this isn't anything developed on record, but if they have a case that they can feel that they can prove beyond a reasonable doubt based upon the testimony of two eyewitnesses. But you know how there's been reams and reams and reams of things written about how credible even unimpeachable eyewitnesses are. I mean, it's probably, although the juries think it's a lot, that it's probably the worst evidence in terms of reliability. Eyewitness testimony is incredibly dangerous unless it's corroborated. Here I think you've got a drug addict and his father, and the father's viewing it from some distance away. I mean, that's not the kind of eyewitness that you'd think you'd want to bank on. And the jury hung the first time. I understand. But I also point out that that was the prosecution's case theory. The defense's case theory below or at the criminal trial was alibi. So really the issue of whether it was a close-range firing or not was not the issue. Move the mic a little bit. I'm sorry. The issue of the close-range firing, while it was a fact developed at trial, it was not the case theory of either side. And it wasn't really a point of contention. Well, it was the case theory of the prosecution that the eyewitnesses testified it was a close-range firing, and the medical examiners said there was no evidence of it being a close-range firing. On cross-examination. So I understand. So I understand your position. Would you say it was a case theory or it happened to be some of the evidence that was adduced? I'm trying to determine what you're saying in terms of emphasis here. With regards to that question, my emphasis is that there were facts that were developed. I would suggest that the Commonwealth could have tried this case regardless of whether it was a close-range firing or not. To what extent did it matter? That is what I would be considering pivotal in whether it was something I considered a case theory or whether it just so happened that I had eyewitnesses who claimed that it was a shooting that occurred at close range as opposed to somewhere distant. If I understand your question, Your Honor, I don't believe the fact that it was a close-range filing was germane to the factual determination in the case. It's also a matter of emphasis, which was part of my question. It's germane to credibility. Yeah. Which is all you've got. It's germane to credibility as to – I'm not even sure how that is – The eyewitnesses. You've got two eyewitnesses and they can be impeached, certainly, and perhaps impeached significantly if it were determined through scientific testing that the shooting could not have occurred at the range they've both testified that it did. And the defendant's got two witnesses saying he was someplace else at the time of the shooting. Then it actually does become a type of identification issue, doesn't it? Okay. Well, this comes back to Judge McKee's original question, which was why was the test not done? I can't answer that question either personally or on the facts that are developed in this record. That being said, again, the Commonwealth felt confident that they were able to obtain the conviction with the evidence that they presented, with the evidence that they had, and they, in fact, did so. Which brings us to kind of the seminal point in this case, which is due process and whether or not Mr. Derrickson was afforded due process in this case. And if I might point out for the panel, Judge O'Neill below determined this case on a Brady analysis. 2254. Pardon? In the 2254, is that what you're referring to? I'm not sure what Your Honor is referring to. The habeas action? No, sir. In the 1983 action. This matters on appeal from a 1983 dismissal. All right, but there was a habeas action. There was a habeas action before the late Judge Weiner. Right. This issue was not raised in the habeas action. This issue was also never raised in any of the plaintiff's PCRA petitions. It probably couldn't be raised in the habeas because of Heck v. Humphrey. The 1983 action, in a sense, is kind of an end run around Heck v. Humphrey. It may be an appropriate end run, but I'm not sure how you could really raise it in habeas without running into the Supreme Court's decision in Heck v. Humphrey. Well, actually, Your Honor, what I would suggest is that the habeas is the absolutely correct way to raise this issue. But he was restricted by time limitations. Mr. Derrickson did not develop this theory until after other cases developed the theory in the DNA context. Mr. Derrickson developed this theory through a 1983 action because he would have been time barred from filing it as a federal habeas action. Well, he could have raised it even as an ineffective assistance claim in habeas action, couldn't he? He certainly could have. Why didn't his criminal trial? Why didn't his attorneys seek it at the time? Why didn't they seek a continuance? Why didn't they try to get some kind of examination and or test then and present evidence during the defense? He certainly could have. And, in fact, in one of his PCRA petitions, he raised 19. He filed two. He raised 19. But he knows the pro se, and we see those all the time. And the fact he raised 19 issues. Well, he was actually represented by counsel in the one that he raised 19 issues. I don't know that they all survived the initial review. No, I thought he filed a pro se complaint with 19 issues, and an attorney came in and it was an amended complaint, which probably still did, if you're right. This is true.  And that goes, Your Honor, to a point that you made at the outset, which is the preeminently wrong case for this decision to be made. Mr. Derrickson and his trial counsel could have had access, would have had access, to this clothing. And the fact that he didn't raise it at the criminal trial could have been a deficiency on his trial counsel's part if their theory was this couldn't have been a close-range shooting. But their theory was an alibi defense. They defended the case strictly on an alibi theory. Therefore, the issue of close-range firing was not an issue. It was an issue because it was an issue of credibility of the prosecution's witnesses. One doesn't exclude the other. The alibi is there to undermine the testimony of the prosecution's eyewitnesses. And that's where the evidence comes in, because if you can show by the physical evidence that the shooting did not happen the way the drug-addicted witness and his father said it happened, and you've got someone, two witnesses to show you as somewhere else at the time of the shooting, you can then argue to the jury, show to the jury either mistaken identification or two, it's a frame-up or whatever, but for whatever reasons, the prosecution's witnesses are lying to the jury. They're intimately related. You can't separate the two. And these are theories that could have been developed at the criminal trial, prior to the criminal trial. They could have had access, requested access, to this clothing. Mr. Derrickson could have raised this in a PCRA petition, and he could have raised it in a federal habeas petition. Yeah, but you can agree with that, but he didn't. And the only way you can get around the habeas cause and prejudice argument here is if he were to test the clothing, if he were to get a 1983 action, test the clothing, and show that there is no stippling, no powder burns, nothing, no evidence of close-range fire on the jacket, then arguably he could maintain that that's evidence of actual innocence and get around the time bar on habeas. So the fact that he could have done it before doesn't really help us in terms of, it may go to the equities jury in whatever balancing we have to do under the due process issues, but it doesn't really help us answer the ultimate question. Well, it does go to the court's analysis with regards to the due process violation, because there's no authority for allowing access to this type of analysis. Well, Mr. Connell, on that point, my understanding of Mr. Derrickson's position is that it draws much of, if not most of its legal force from Brady, or at least the due process notions incorporated in Brady. Your position is, if I understand it correctly, is that Brady has temporal constraints on it, or temporal slash procedural constraints, such that it would not be applicable here. Is that a fair characterization of your position, at least in part? Indeed. I'm not sure that our terminology would match up, Judge, but yes. Brady says you're entitled to due process notice and a fair hearing. In essence, that's what it is. And in Brady, the defendant didn't get that because the prosecution withheld evidence. Brady and his progeny says, prosecution, you cannot withheld evidence. You have to have an open book, and in the interest of justice. And the district attorney's office obviously agrees with that. There's no allegation in this case that anything has been withheld, as I understand it, except or unless you regard the much later refusal of your office to make it available in discovery, when I guess there was a letter or something that went out and sought the evidence. And that was the basis of Mr. Derrickson's original complaint here. The district attorney's office refused to provide him access to certain evidence after he requested it during the federal habeas action. The district attorney's office, relying upon the Post-Conviction Relief Act, said your time barred from discovery absent certain showings under the PCRI. And the district attorney's office said you're not entitled to it at this stage of the litigation. So why did they give him some evidence and not the rest? I'm glad you asked that, Your Honor. What happened was, and the counsel for Mr. Derrickson kind of suggested that the DA's office acted, by turning over photos and not turning over the clothing evidence, that they were picking and choosing what evidence they would. What actually happened was Mr. Derrickson, the late Judge Wiener, suggested to Mr. Derrickson, contact the DA's office during the habeas case and ask for what you're looking for. Mr. Derrickson's position then was, my criminal trial counsel didn't give me all the evidence, so he asked for evidence. The DA's office subsequently turned over all evidence that was made available or that the criminal attorney had at the time of the criminal trial. Thereafter, four years later, Mr. Derrickson asked for photographs, the clothing, and access to the automobile. When he was denied that by the DA's office, this is when he filed the 1983 action. The reason the photos were turned over during the course of this litigation was because he had access to the photographs at trial. He asked for them. There's a letter in the record. There's a letter referenced in the record from Mr. Derrickson where he said, my criminal trial attorney did not turn over the photographs to me. There's also photographs that were entered at the criminal trial, and there's references in the record by Mr. Kovach that the criminal trial attorney had access to the photographs, reviewed them, and determined that they were not material. Does that mean that the jacket then was not introduced into evidence? I do not believe that the clothing of the victim was introduced into evidence. Why has it been kept there? I can't answer that question. I don't know why they have kept it in storage. And the car. They still have the car. Well, the car, obviously there are restrictions on what the district attorney's office can maintain. And, in fact, there was a deposition in this matter. The car was released to the jurisdiction, the city of Chester. It was impounded. That brings another interesting question with regards to the right to allegedly exculpatory evidence. We have to look at the character of the evidence as well. A broad-reaching right of access limits the district attorney's office ability to maintain. Well, first, the district attorney's office has limited ability to maintain evidence. How are we going to draw the distinction between whether it's a car, a boat, a house, which may be taken in a drug action, or clothing? That's why the DNA, that's one of the reasons why the DNA cases are so distinctive here. The DNA can be stored. We're talking about typically biological evidence. It also can be the other interesting thing about DNA evidence is that typically in the cases that have been cited, almost exclusively in the cases that have been cited in support of Mr. Dirksen's position, is that the evidence was not only conclusive, but it wasn't available at the time of the trial. Here, the evidence was available at the time. Do you know whether it was ever proffered, whether there was any offer to place it into the record at trial? Not actually, but the record on appeal does have the pages from the criminal trial transcript, which references the exhibits that were entered, and I do not believe that they are in there. And if I may close on one point. What that leaves us with in this case, as in a potentially vast number of other cases, is the question of whether there would be an obligation on the part of prosecutors to retain evidence, to retain matter that was not used as evidence during the course of trial, but that had some significance during the course of the investigation. That is what would naturally flow from a ruling in favor of Mr. Dirksen here. And what happens if you, as apparently here, retain that matter, that non-admitted evidence for some period of time, and then for reasons of internal procedure space, what have you, destroy it? Does it give rise to the potential of spoliation issues and claims of bad faith if discretionary decisions are made by prosecution offices to rid themselves of these unused items? I think it would give rise to at least colorable claims of that nature. I don't have an established schedule for destroying evidence. I don't see how it could give rise to such a claim. If you've kept it, why not let them look at it? I understand that. That's my problem. I just don't understand what the problem is. If it comes back that there's no stippling on there, it's not really conclusive, but it seems to me that's the end of it. I'm sorry, if it comes back that there is stippling on it, it certainly helps you and that puts an end to it. If it comes back that there's no stippling or powder burns on it, then it does seem that it's somewhat inconclusive because it could have gotten rubbed off in storage, but it's the end of it. But again, as a prosecutor, and you've corrected me appropriately, you went from the prosecutor's office. It's to me that you want to know. So how big of a deal is it? You've got it. You just put it under the microscope and see what you see. And this goes back to one of the questions you addressed with Mr. Derrickson's counsel earlier, which is there is no evidence of record as to the reliability of the test, and what sorts of doors would it open if the test was inconclusive? Well, there is evidence of record because the state's expert witness testified that it was a test which could determine whether it was close. But that's not evidence of record that the clothing actually has revealed it. No, but it's evidence of record that it's a reliable test, that it can be done. Fifteen years ago, that was the testimony during the criminal trial and cross-examination. That is not the record that's developed today in this matter on appeal. If you have it, why not look into it instead of just saying, no, no, no, no, no, we won't do a thing? Because in the interest of – It would not help attorneys bill hours, but it would certainly help the court's heart and it might be more consistent with trying to achieve a just result. In the interest of the finality of judgments, which is another critical issue for this panel to consider, is at what point does that stop? This would put a burden – If you convicted the wrong person, do you have an interest in finalizing a judgment of a person who was wrongfully convicted? You don't have that interest, do you? There could be – there's no indication. Mr. Derrickson was not wrongfully convicted. Mr. Derrickson received his due process and, in fact, was convicted after a trial in 1995. He was not wrongfully convicted. What was the other evidence? Was there any corroboration of the two eyewitnesses at all about the range of the shooting or who was the shooter? Was there any corroboration at all? I don't – I have not read the criminal trial transcripts. But it's my understanding – It bogs my mind that we'll get attorneys coming in here at the appellate level. They want the trial counsel and they'll say something like, I wasn't the counsel below. I mean, how can you – and I'm not just directing it to you. I guess it's a generic problem I have with attorneys who come in to make appellate arguments who haven't read the trial transcripts. I don't know how you can make appellate arguments on either side without reading the trial transcript. If I may, Your Honor, this issue, when raised below in the 1983 action, was a narrow issue of a Brady violation. Derrickson disclaims that it was a Brady claim now on page 4. When you say raised below, you mean in the district court. In the district court. Because it was never an issue before that, right? Yes, Your Honor. What I'm referring to is the district court, he filed this 1983 action as a Brady violation. Right. The district court, and if you look, the district court's opinion analyzes this case as a Brady violation because this issue of a generalized constitutional right to due process was not raised below. And that is a critical issue here because Judge O'Neill's decision looked at whether or not there was a Brady violation. That's how this 1983 case action was defended by myself. Frankly, the criminal trial below was not germane to defending this 1983 action because it was a Brady case. I don't know, it seems to me I have to know what the testimony was to get into whether or not this arguably is Brady material. If this corroboration, and I'm not sure, it's a hybrid Brady. It's not really a Brady claim, and I know the district court resolved it as Brady, but it really isn't Brady because this is evidence that was not long to be withheld. They knew about it, could have asked for it, and I assume they would have gotten it. Had they not gotten it when asked for it, then maybe this is a better Brady issue. But it could also be totally inculpatory if turned over in these tests and run it and might establish that the witnesses absolutely were talking to it, so it's not really Brady. If I could just point out for the panel that this court has ruled on a similar issue, and although unfortunately it's not cited in my brief, the case of Gibson versus the Superintendent of New Jersey's Department of Law and Public Safety, 411 F. 3rd. 427, this court specifically stated that the plaintiff in that action who was filed in 1983 case alleging racial discrimination. Have you given Mr. Rana notice of the fact you're going to rely upon a case that was not in your brief? It was cited. I have not, and it was cited in a case that Mr. Rana did rely upon. But this court did address the issue of post-conviction access to exculpatory evidence. Not exactly in this environment, but it was non-DNA evidence. And again, that goes back to the argument that this was a Brady case. It was analyzed as a Brady case below, and it was tried as a Brady case. Tried through the discovery process as a Brady case. In their motion for summary judgment and response to the district attorney's office motion for summary judgment, they argued Brady elements. They did not raise this issue of a generalized due process right. That's why it's coming for the first time here, this argument. I see that my time has been long past. Anything else? Yeah. Okay. Thank you very much, Mr. Collins. Thank you. I have a few points in rebuttal. First, with regard to the Gibson case that Mr. Connell is now raising, that has no applicability here. I don't remember the exact facts or posture of that case, but it did not address the question that was before this court today, whether the principles of Brady v. Maryland and the due process clause support a post-conviction right of access. And that leads me to my — What are the principles of Brady? So there's an obligation to turn over evidence that will — the defendant will establish either innocence or allow the defendant to impeach a prosecution witness that is material to the prosecution, material to the determination of guilt. This may be material in the other sense. This might be material in that it conclusively establishes that the two eyewitnesses who said that this happened by your client firing at close range into the car, that they were absolutely telling the truth. Now, how do you get a Brady claim out of that? Judge McKee, let me answer your question in two parts. First, Dr. Conestoglos testified at trial that he saw no visible evidence of close-range firing. So it's — On the skin. On the skin. All he did was a visual — A visual inspection. So it's possible that the test results might come back inculpatory. But it is much more likely, based on Dr. Conestoglos' visible examination — But why is that? How do you see microscopic powder elements with an examination by the naked eye? Unless you're Clark Kent. What I understand is that he inspected the bullet wounds to see if there was any soot or other sort of gunpowder residue that was visible from the — what he called a naked eye examination. Right. But if he's wearing a — And you could get the — if it's a contact shot, you could, from the naked eye, see the burning around the wound and maybe the stippling, too. But if the guy's got on a heavy, thick, down jacket, you probably — I'm assuming you probably would not get the same kind of transference of heat from the muzzle of a gun to the skin, and you wouldn't get the same kind of burning. So the fact that there's just an eyeball examination of the skin that shows no stippling and no burning doesn't really — I don't know whether or not this was a close-range — was the evidence that it was a contact shot or just a close-range shot? The record's not clear. I mean, the prosecution's theory was that Mr. Derrickson walked up to the victim who was seated in his car, reached into the car, took the keys out of the ignition, attempted to rob the victim, and when that failed, shot the victim at extreme close range, once in the chest, once in the arm. That the victim then took the keys, and although he was mortally wounded, restarted the car, drove away, and crashed into a parked car and was found dead by the police shortly thereafter. Wasn't there some evidence by a prosecution witness that the angle of entry and the trajectory of the wound was consistent with the way the witnesses said that the firing occurred? I think, Judge McKee, what you're referring to is the fact that the victim may have been sort of, you know, leaning away from when he saw the gunshot. That would still be consistent with our theory, that Mr. Derrickson established a sufficient predicate, at least to get access to the evidence. The court doesn't have to decide today. Well, he's leaning in the way that you just described. What are the chances of getting the dispersal of the powder? I mean, I think you'd admit, and you wouldn't have to be an expert to figure this out, the further the surface of his coat is from the gun, the more dispersed the powder is going to be when it gets to the coat, and the less chance there's going to be of finding particles on the coat. Judge, those are precisely the kind of arguments the State still has the ability to make if the evidence came back as we suggest it's palpatory. They could make that in opposition to a petition for clemency. Why is it even relevant? I mean, it has to be some high level of relevance to your client's not just guilt or innocence, but your client's innocence, it would seem to me, in order to make out this hybrid predicate. And, Judge McKeon, I think that based on the facts before the court that they haven't disputed, based on the fact that they haven't disputed the testing might just yield evidence probative innocence, and based on the fact they haven't identified burden or prejudice, it's really just sitting, the evidence is sitting in a locker. We would submit that due process requires, in these narrow circumstances, that the prison. Let me ask you this, and this is outside the record, but lawyers like to litigate stuff. Sometimes, and maybe Edison got it right, maybe a phone call works. Have you tried just picking up the phone, calling the chief of whatever unit, and just saying, look, it's probably too late to do it now because it's gotten so litigious, and just saying, look, there's an issue I'm concerned, there's a transcript here that suggests that something you still have in storage may be relevant to my client's guilt or innocence. Is it possible if I pay for it that I can have access to test this code? Judge McKee, Mr. Derrickson tried that route in 2004. Did his attorney try that? He was pro se at that point. He didn't have any representation. Have you tried that? We were appointed by this court about a year ago. We have not tried that. Based on the district attorney's office's posture, there's no indication that they're willing to turn over this evidence. I would like to make one other point, and that is Judge O'Neill's ruling below. Respectfully, Judge O'Neill didn't understand the nature of the claim here. Well, it's hard to understand. I'm not sure I understand. You're arguing a due process right to evidence which may or may not be exculpatory, that was not, so far as I can tell, was not introduced at trial 10 to 15 years, 10 years after the initial jury determination, 13 years after the shooting, and that right is based upon something in the due process clause other than a strict reading of Brady. The right that we're asserting today, and we're asking this court to recognize in the case of first impression, is the same right that underlay the Ninth Circuit decision in Osborne, the decision by Judge Gertner in Wade v. Brady in the District of Massachusetts. I would point out for the court that the judge in the Eastern District of New York recently decided the case on remand from the Second Circuit in McKithin v. Brown, which also found a post-conviction right of access. So there is a sound constitutional basis for the right that we're asking this court to recognize. The only distinction between our case and those cases is the fact that, well, two distinctions. The fact that those cases are DNA testing and we're requesting forensic testing, and in our brief we have argued that from a constitutional perspective, we don't think that the type of testing is significant. And also the difference is that Mr. Derrickson might have been able to request this evidence in trial, whereas in the DNA cases, those are for newly discovered methods of testing. In our brief, we also addressed that, that that's a factor for this court to consider, but not a bar to his claim, and that there are sufficient countervailing interests in this case that are more than sufficient to overcome the fact that he could have requested the evidence. We understand your argument, Mr. We thank both counsels very much for a very helpful argument. We'll take the matter under advisement. And we particularly thank pro bono counsel for their help to the court. Yes, very much. We do. And Judge Smith just reminded me of the fact that we're co-appointed. Also, when you get back to office, I don't know who there is in charge of taking these things and assigning them, but can you please express our gratitude to him or her for accepting the appointment and using the facilities of the firm to have representation here. Thank you, Judge. Thank you.